<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRAZIER INDUSTRIAL COMPANY,<br>     *Plaintiff*,<br><br>v.<br><br>PPT INDUSTRIAL MACHINES LLC D/B/A PACIFIC PRESS TECHNOLOGIES, RIGHT LANE INDUSTRIES, LLC, and JOHN DOES 1-10,<br><br>     *Defendants.* | Civil No.: 19-cv-19822 (KSH) (CLW)<br><br><br><u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction**

This action involves a dispute between plaintiff Frazier Industrial Company ("Frazier") and defendants PPT Industrial Machines, LLC d/b/a Pacific Press Technologies ("PPT"), Right Lane Industries, LLC ("Right Lane"), and John Does 1-10 (together, the "defendants") concerning Frazier's purchase of eight steel press formers[1] from PPT.  Frazier alleges that PPT breached the parties' contract by intentionally delivering low quality product.

Pending before the Court are two motions, one from each side.  First, there is Frazier's appeal (D.E. 301) from the January 1, 2025 opinion and order of Magistrate Judge Cathy L. Waldor (D.E. 298, 299), which denied its motion for reconsideration for leave to file a fourth amended complaint.  Second, there is Right Lane's renewed motion to dismiss under Rule 12(b)(2) or alternatively under Rule 12(b)(6).  (D.E. 315.)

---

[1]  Frazier "designs and manufactures custom structural steel rack systems for sale" and uses press formers to "punch[] holes through steel" to install these steel rack systems in warehouses.  (D.E. 107, Third Am. Compl. ("TAC") ¶ 27; D.E. 301-2, Mot. to Amend Oral Argument Tr., at 5:4-17.)

For the reasons below, the Court affirms Judge Waldor's opinion and order and grants Right Lane's motion to dismiss for lack of personal jurisdiction.

## II. Background

This action spans five years and has over 300 docket entries, many of which are letters and motions relating to discovery disputes between the parties. They have fought tooth and nail over their obligations under the Federal Rules of Civil Procedure and court orders and are presently on their 19th amended pretrial scheduling order.[2]

Frazier is a 40-year customer of PPT and, prior to this present dispute, had purchased 13 Model 200 PFII Hydraulic Gap Frame Presses ("200 PF2 Presses"). (D.E. 107, TAC ¶ 2.) In early 2017, Frazier arranged to buy eight more. (*Id.* ¶¶ 2-13.) Instead, Frazier alleges that PPT sent eight 200 Model PFIII/PF3/Ecoformer Presses ("PF3/Ecoformer Presses"). (*Id.* ¶¶ 13, 31, 45-47.) Frazier alleges that PPT intentionally did this "bait and switch" by representing the presses were 200 PF2 Presses with a punching capacity of 133 tons when in reality they were PF3/Ecoformer Presses with a punching capacity of only 100 tons. (*Id.* ¶¶ 11-13, 51-54, 58, 65, 73-74; D.E. 321, Pl. Opp., at 1.) Frazier alleges that it requires 133 tons of punching capacity for its work; the presses were inferior and "[a]lmost immediately . . . failed to operate"; and they had various design defects, including "an inadequate cooling system, and inadequate oil filtration resulting in multiple mechanical and hydraulic failures." (D.E. 107, TAC ¶¶ 11-13, 63-64, 67.)

Right Lane, an industrial holding company, acquired PPT in March 2017. (*Id.* ¶ 14.) Frazier alleges that Right Lane became involved in PPT's management, and encouraged it to "develop, market, and sell standard less expensive machines using off-the-shelf components,

---

[2] The pretrial order provides that fact discovery is closed, except for two remaining issues, and sets a deadline for completion of expert discovery reports and depositions by October 27, 2025. (D.E. 338, 19th Am. Pretrial Order, at 1-2.)

including a less expensive Model Press, to make it more competitive in the marketplace," and those inferior machines are what PPT sent to Frazier. (*Id.* ¶¶ 14-16, 53.) Frazier alleges that Right Lane's CEO Eric Mara "participated in a scheme to defraud and mislead Frazier" either by directing PPT to sell lower quality products or by being aware that it was doing that. (*Id.* ¶¶ 92-98.)

### III.   Procedural History

Frazier originally sued PPT in New Jersey state court, alleging common law claims of breach of contract, breach of implied and express warranties, and statutory violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.* (D.E. 1 & Ex. A.) PPT removed in November 2019 based on diversity jurisdiction and filed a motion to dismiss. (D.E. 1, 11.) Frazier filed an amended complaint. (D.E. 23.) Again, PPT moved to dismiss. (D.E. 27.) The Court denied the motion in 2020 and PPT filed an answer. (D.E. 52, 54, 56.)

Contentious disputes ensued, including motions to compel discovery (D.E. 75), to quash (D.E. 101), for sanctions (D.E. 163), for default (D.E. 227) along with appeals of discovery orders (D.E. 148). The parties have docketed more than a dozen letters to the Court fighting about discovery. (*See generally* Docket; *see e.g.*, D.E. 162, 165, 166.)

On February 23, 2022, Frazier filed a third amended complaint, adding Right Lane and John Does 1-10 as defendants. (D.E. 107.) PPT answered and Right Lane moved to dismiss, asserting that this Court does not have personal jurisdiction over it and that the complaint failed to state a claim. (D.E. 134, 135.) That motion was administratively terminated due to the parties' upcoming mediation, which turned out to be unsuccessful. (D.E. 178.) Right Lane filed a second motion to dismiss (D.E. 190), which the Court denied without prejudice to renewal after limited jurisdictional discovery. (D.E. 220.)

In August 2023, Frazier moved for leave to file a fourth amended complaint adding Right Lane's CEO Eric Mara as a defendant. (D.E. 211.) In October, Frazier withdrew this motion without prejudice and refiled it in December 2023. (D.E. 234, 238.) The parties briefed it (D.E. 239, 241) and in a text order, Judge Waldor ordered supplemental briefing. From defendants, she asked for "additional information concerning [their] undue delay argument," specifically highlighting what documents Frazier received in discovery "involving Mara" and when Frazier got them. (D.E. 263.) She directed Frazier to "point to specific information giving rise to and reflected in the proposed amendments that was withheld until shortly before the filing of the present motion." (*Id.*) The parties timely submitted their papers. (D.E. 267, 268, 269.)

Judge Waldor held oral argument, during which Frazier recounted the long procedural history of this case. (D.E. 301-2, Mot. to Amend Oral Argument Tr.) It argued it acted timely in seeking permission to file a fourth amended complaint as late as October 2024 because it had not known about Mara's potential involvement until Right Lane identified him as a Rule 30(b)(6) witness in January 2023, and wasn't "prepared to bring a claim against Mr. Mara until [counsel] took his deposition." (*Id.* at 4:1-21:18, 39:2-7.) Frazier also alleged that defendants intentionally delayed Mara's deposition, which had begun in April 2023, continued in October 2023, and finally concluded in February 2024. (*Id.* at 12:15-18:12, 40:6-10.)

Defendants responded that as early as April 2021 Frazier knew who Mara was and what he did as Right Lane's CEO. (*Id.* 24:18-25:25.) They pointed to numerous letters and briefs Frazier filed in 2021 and 2022 expressing its theory that "Mara, on behalf of Right Lane, was actively involved in the development of the new PF3 models, delivery of them to Frazier, and pushed Right Lane's strategy and goal to use Frazier as the 'guinea pig' to allow PPT to enter a new market to remain competitive by developing the 200PF3 Ecoformer." (*Id.* at 27:6-33:3

4

(quoting D.E. 106, Pl. Feb. 15, 2022 Opp. Br., at 15; citing D.E. 75, 142, 152, 157).) They also pointed to Frazier's statement in a brief that by July 2022, documents produced by PPT in discovery "demonstrat[ed] that Eric Mara . . . was informed of the terms and conditions of the sale of the 200 P3 Press Formers to Frazier, including the proposals that contain[ed] material misrepresentations regarding the specifications of the machines." (*Id.* at 31:1-32:4 (quoting D.E. 152, Pl. July 1, 2022 Opp. Br., at 10).) Defendants argued that Frazier's failure to name Mara as a defendant until December 2023 constituted undue delay and adding him would cause significant disruption to the case, to defendants' prejudice. (*Id.* at 34:18-36:1.)

In an oral opinion on November 5, 2024, Judge Waldor denied the motion. (D.E. 283, 284.) She found Frazier's reasons for not amending sooner were unpersuasive and defendants would be unduly prejudiced by further delay. (D.E. 284, Nov. 5, 2024 Oral Op., at 12:13-14:7.) She noted that "[i]t is unclear from the pleadings what new information about Mara's involvement, ownership and control over defendants came to light between August 2023 and December 2023 to explain why plaintiff did not seek leave to amend sooner." (*Id.* at 12:8-12.) She therefore found the *Foman*[3] factor of undue delay weighed in favor of denying the motion. (*Id.* at 12:13-15.)

Judge Waldor also determined that "it is likely that the proposed amendment would lead to additional discovery, cost, and preparation to defend against the new facts or theories." (*Id.* at

---

[3] The five factors outlined in *Foman v. Davis*, 371 U.S. 178 (1962) govern motions for leave to amend, directing courts to consider and weigh: "one, undue delay on the part of the party seeking to amend; two, bad faith or dilatory motive behind the amendment; and, three, repeated failures to cure deficiencies through multiple prior amendments; and, four, undue prejudice on the opposing party; five, the futility of the amendment." (D.E. 284, Nov. 5, 2024 Oral Op., at 9:6-12.) As Judge Waldor correctly noted, "prejudice to the nonmoving party is the touchstone for the denial of amendment." (*Id.* at 12:24-13:4 (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993)).)

2:17-9:3, 13:5-24.) She noted that Frazier sought to "add a new civil conspiracy claim and many other claims against Mara as the alter ego of defendants," which Mara would be entitled to defend against through additional written discovery and depositions. (*Id.* at 13:5-24.) She held that "after almost five years of litigation, the prejudice factor weighs in favor of denying plaintiff's motion for leave to file a Fourth Amended Complaint." (*Id.* at 14:2-4.)

Frazier filed a motion for reconsideration (D.E. 285), which Judge Waldor denied on January 7, 2025. (D.E. 298, 299.) In a written opinion, she found that Frazier failed "to sufficiently demonstrate that this Court made a clear error of law or fact regarding its findings of undue delay and undue prejudice." (D.E. 298, Recon. Op., at 4.) She also refused to consider arguments she said Frazier was raising for the first time. (*Id.* at 4-6.)

## IV. Standard of Review on These Motions

### A. <u>Appeals of Magistrate Judge Decisions</u>

A district court may "reconsider" a magistrate judge's decision where it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); *see* Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). The burden of that showing rests with the appellant. *Wag Acquisition, LLC v. Gattyán Grp.*, 2020 WL 5105194, at *2 (D.N.J. Aug. 31, 2020) (McNulty, J.).

"A ruling is clearly erroneous where, although there is evidence to support it, the district court upon review of the entire evidence is left with the 'definite and firm conviction that a mistake has been committed.'" *Washington v. Ellis*, 2022 WL 3226630, at *1 (D.N.J. July 20, 2022) (Sheridan, J.) (quoting *Essex Chem. Corp. v. Hartford Accident & Indem. Co.*, 993 F. Supp. 241, 245 (D.N.J. 1998) (Lifland, J.)). But "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Vision Indus. Grp., Inc. v. ACU Plasmold, Inc.*, 2025 WL 1341177, at *3 (D.N.J. May 7, 2025) (Semper, J.) (quoting

*United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014)). And a ruling is "contrary to law" if the magistrate judge "has misinterpreted or misapplied applicable law." *Id.* (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (Debevoise, J.)).

### B. Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(2), a defendant may move to dismiss a complaint for "lack of personal jurisdiction." It is the plaintiff's burden to show that personal jurisdiction exists over a moving defendant, and the court will take the plaintiff's allegations as true and draw all factual disputes in its favor. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). But the plaintiff still must establish "with reasonable particularity sufficient contacts between the defendant and the forum state" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation and internal quotation marks omitted).

The Third Circuit has held:

> A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.
>
> *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) (internal citation omitted) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)).

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 144-45 (3d Cir. 1992). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution," *Miller Yacht Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)), which in turn requires the

7

defendant to have "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice," *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

For general jurisdiction to exist, the corporation must have "continuous and systematic" contacts with the forum state "as to render [it] essentially at home in the forum State." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 384 (3d Cir. 2022) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  For specific jurisdiction to exist, the corporation must have "purposefully directed [its] activities" at the forum; the litigation must "arise out of or relate to" at least one of those activities; and the court's exercise of jurisdiction must "comport[] with 'fair play and substantial justice.'"  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (first quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); and then quoting *Burger King*, 471 U.S. at 476 (citation omitted)).  The corporation's contacts must have deliberately targeted the forum; "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient.  *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

## V. Discussion

### A. Frazier's Appeal:  Was Judge Waldor Wrong?

Frazier appeals Judge Waldor's decision denying its motion for reconsideration for leave to file a fourth amended complaint.

Motions for reconsideration are governed by Local Civil Rule 7.1(i), which allows an aggrieved party to seek reconsideration where the party believes the Court has overlooked information or controlling law.  To succeed, the movant must demonstrate "(1) an intervening

8

change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration may not be used "to raise arguments or present evidence that could have been raised prior to the entry of judgment," *In re Coinbase Global, Inc. Secs. Litig.*, 2025 WL 1040633, at *2 (D.N.J. Apr. 8, 2025) (Martinotti, J.), nor may it be used to simply reargue the original motion, *Jansenius v. Holtec Int'l*, 2024 WL 2818280, at *2 (D.N.J. June 3, 2024) (Williams, J.).

Rule 15 governs motions to amend and directs courts to "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). But "[t]he decision of whether to grant leave to amend a pleading is 'a matter committed to the sound discretion of the district court.'" *Vision Indus. Grp.*, 2025 WL 1341177, at *8 (quoting *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, . . . futility," and "prejudice to the non-moving party." *Arthur v. Maersk, Inc.* 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman*, 371 U.S. at 182).

Frazier does not allege that there has been an intervening change of the law or that new evidence is available to justify reconsideration. Rather, it argues that Judge Waldor's ruling of undue delay and undue prejudice was clearly erroneous and contrary to applicable law, as were certain of her factual findings. (D.E. 301, Pl. Appeal, at 15-24.) It also contends that Judge Waldor "fail[ed] to apply" Rule 15, and that she committed clear error when she said Frazier raised new issues in its reconsideration motion. (*Id.* at 16-18.)

In her initial oral opinion, Judge Waldor found Frazier did not adequately explain why it did not seek leave to amend sooner, even though she had entered a text order requiring "specific

9

information giving rise to and reflected in the proposed amendments that was withheld until shortly before the filing of the present motion." (D.E. 284, Nov. 5, 2024 Oral Op., at 12:8-12; *see* D.E. 263.) She also found undue prejudice because, based on the pleadings and procedural history of the case, "it is likely that the proposed amendment would lead to additional discovery, cost, and preparation to defend against the new facts or theories." (D.E. 284, Nov. 5, 2024 Oral Op., at 2:17-9:3, 13:5-14:1.)

In her reconsideration opinion, Judge Waldor acknowledged that Frazier disagreed with her findings that

> (i) Plaintiff previously had leave to amend the pleadings, (ii) Plaintiff's reasons for not amending sooner were unclear, (iii) filing the fourth amended complaint would prejudice Defendants, and (iv) amendment would alter the case (i.e., it is likely that the proposed amendment would lead to additional discovery, cost, and preparation to defend against the new facts or theories).

(D.E. 298, Recon. Op., at 5.) These are the same issues Frazier raises in its present appeal. (*See* D.E. 301, Pl. Appeal, at 19-24.)

"[D]isagreement does not indicate the Court made a clear error warranting reconsideration." (D.E. 298, Recon. Op., at 5.) Judge Waldor had given Frazier two chances—by way of supplemental submissions and oral argument—to back up its claim that it could not amend sooner. She found it did not, and the record supports her. Frazier's own filings show it knew about Mara and even theorized about his culpability back in 2021 and 2022. That it waited to complete Mara's deposition before filing a fourth amended complaint does not excuse its delay.[4] And based on the procedural history of the case, Judge Waldor easily found that adding

---

[4] The Court also questions Frazier's representation that completing Mara's deposition was necessary. (D.E. 301, Pl. Appeal, at 15.) For one, the deposition continued until February 2024, yet that did not deter Frazier from filing its motion for leave to amend in December 2023. As well, in a January 9, 2024 letter to Judge Waldor, Frazier represented that in his October 10,

10

Mara would trigger dipositive motion practice and reopen fact discovery at the expense of, and prejudice to, defendants.

Moreover, Judge Waldor clearly applied Rule 15. (D.E. 284, Nov. 5, 2024 Oral Op., at 9:4-10:8 (outlining that leave to amend is governed by Rule 15 and the *Foman* factors and explaining what those standards are).) Frazier's real argument is that Judge Waldor did not exercise her discretion under Rule 15 the way that it wanted her to.

Frazier also argues Judge Waldor was wrong not to consider Right Lane's pending motion to dismiss and the fact that expert discovery is still going on. (D.E. 301, Pl. Appeal, at 17-18, 23-24.) Judge Waldor properly found both of these are new arguments. (D.E. 298, Recon. Op., at 5.) At oral argument Frazier mentioned these issues in passing as evidence of defendants' "stall tactic[s]" and obstructive, dilatory conduct. (*See* D.E. 301-2, Mot. to Amend Oral Argument Tr., at 10:18-24, 19:17-19.) But the first time that these issues are explicitly tied to an undue prejudice argument was in Frazier's motion for reconsideration. (*See* D.E. 285, Pl. Mtn. for Recon., at 15.)

---

2023 deposition Mara was "uncooperative," "refused to answer routine questions," and "provided mainly non-responsive answers" to Frazier's questions. (D.E. 240, at 3, 5-6.)

And in its December 21, 2023 memorandum in support of its motion for leave to file the fourth amended complaint, Frazier states that it learned of some critical information in Mara's April 5, 2023 deposition and attaches excerpts of that deposition as an exhibit, but does not highlight the helpfulness of Mara's October 10 deposition or allege what further information it gathered. (*See* D.E. 238-1, Pl. Mtn. to Amend Br., at 4-5, 14 & Ex. D, Excerpt of Mara's Apr. 10, 2023 Deposition.) As stated, this led to Judge Waldor's order for supplemental briefing. (D.E. 263.) There, Frazier devoted two of its three pages reiterating defendants' delay tactics without identifying what it had recently learned. (D.E. 267, Pl. Supp. Br., at 1-3.)

While Frazier now attempts to highlight the helpfulness of Mara's October 10 deposition in its present appeal, it should have done so in response to Judge Waldor's inquires. Judge Waldor's finding of undue delay is a permissible view of the evidence Frazier presented to her. *See Vision Indus. Grp.*, 2025 WL 1341177, at *3.

11

Judge Waldor's decision was neither clearly erroneous or contrary to law, and it is affirmed.

### B. <u>Right Lane's Motion to Dismiss</u>[5]

Right Lane, a Delaware limited liability company with its principal place of business in Florida, asserts that it has had no contacts with Frazier nor directed any conduct towards New Jersey. (D.E. 315-2, Right Lane MTD, at 1-12 & Ex. O, Declaration of Eric Mara ("Mara Decl.") ¶ 3.) Frazier argues this Court has personal jurisdiction over Right Lane based on alter ego liability. (D.E. 321, Pl. Opp., at 1-24.)

It is well-known that shareholders of a corporation generally are not held responsible for the liabilities of the corporate enterprise. *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 424-25 (D.N.J. 2019) (Wolfson, J.). Alter ego liability allows a plaintiff to "'pierce the corporate veil' and hold a shareholder personally liable for a corporation's liabilities" normally subject to the protections of the corporate form. *N. Am. Steel Connection, Inc. v. Watson Metal Prods. Corp.*, 515 F. App'x 176, 179 (3d Cir. 2013). That is, "if the subsidiary corporation is merely operating as the parent corporation's alter ego . . . the 'independence of the separate corporate entities [may be] disregarded'" and the court may exercise specific jurisdiction over the parent corporation. *Linus Holding Corp.*, 376 F. Supp. 3d at 423 (quoting *Fisher v. Teva PFC SRL*, 212 F. App'x 72, 76 (3d Cir. 2006)).

The law of the state "under which a foreign limited liability company is formed governs . . . the liability of a member as member and a manager as manager for the debts, obligations, or other liabilities of the company." New Jersey Limited Liability Company Act, N.J.S.A. 42:2C-

---

[5] Since the Court finds that it lacks personal jurisdiction over Right Lane under Rule 12(b)(2), analysis of Right Lane's alternative argument under Rule 12(b)(6) is unnecessary.

57(a)(2). Additionally, "courts within this district have also applied the law of the state that has the most significant connection with the parties and the transaction." *Linus Holding Corp.*, 376 F. Supp. 3d at 424 (citation and internal quotation marks omitted).

Right Lane—which acquired PPT in 2017—was formed under Delaware law. Therefore, Delaware law could govern this Court's alter ego analysis. N.J.S.A. 42:2C-57(a)(2). While Frazier and Right Lane both cite to New Jersey law in their respective briefs, the Court is hard pressed to find that New Jersey "has the most significant connection with the parties and the transaction" for several reasons. *Linus Holding Corp.*, 376 F. Supp. 3d at 424. First, jurisdictional discovery revealed that Right Lane does not do business in New Jersey, nor does it have employees in New Jersey. (D.E. 315-14, Right Lane's Jurisdictional Discovery Responses.) It appears that the parties' only tie to New Jersey is that Frazier is incorporated and headquartered here. (D.E. 315-2, Right Lane MTD, at 11; D.E. 321, Pl. Opp., at 17.) As to the transaction at issue—the sale of the eight press formers—PPT sent one out of seven price proposals to a New Jersey Frazier employee; the rest were sent to Frazier employees in Salt Lake City, Utah. (D.E. 315-2, Right Lane MTD, at 4, 11-13 & Exs. A-D, F-H.) While Frazier's purchase orders display its corporate headquarters address in Long Valley, New Jersey, the orders concern shipments of machines to other states. (D.E. 315 & Exs. E, I.) Indeed, Frazier does not dispute Right Lane's contention that none of the machines went to New Jersey. (D.E. 315-2, Right Lane MTD, at 4 & Ex. O, Mara Decl. ¶¶ 20-23; D.E. 321, Pl. Opp., at 17 & Ex. AA, Declaration of Frazier's President Carlos Oliver ¶ 12.)

The Court will therefore apply Delaware law to its alter ego analysis, noting its analysis would be substantially the same under New Jersey or Delaware law.

13

Under Delaware law, "in order to state a claim for piercing the corporate veil under an alter ego theory, [the plaintiff] must show (1) that the corporation[6] and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008); *cf. N. Am. Steel Connection*, 515 F. App'x at 179 (to pierce the veil in New Jersey a plaintiff must demonstrate (1) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and (2) that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice") (citation omitted).

In determining whether the corporation and its subsidiary operated as "a single economic entity," courts consider:

> whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functions properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012) (quoting *Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008)). Some combination of the above factors is required; "no single factor justifies a decision to disregard the corporate entity." *Trevino*, 583 F. Supp. 2d at 529 (citation omitted).

As to the second element of the alter ego analysis, the plaintiff must show that defendants' use of the corporate form was fraudulent or unjust. *Marnavi S.p.A.*, 900 F. Supp. 2d at 392. "The kind of 'injustice' that is relevant to this analysis is not the underlying facts that give rise to the plaintiff's breach of contract or tort claims, but that the 'fraud or injustice be

---

[6] The below principles are also applicable where the entities are LLCs rather than corporations. *Oliver v. Boston Univ.*, 2000 WL 1091480, at *9, *12 (Del. Ch. Jul. 18, 2000).

found in the defendant's use of the corporate form itself.'" *Triple S Farms, LLC v. DeLaval, Inc.*, 2024 WL 1308822, at *11 (D. Minn. Mar. 27, 2024) (quoting *Zweigenhaft v. PharMerica Corp.*, 2020 WL 5258345, at *2 (D. Del. Sept. 3, 2020)). That is, the plaintiff "must show some connection between its injury and the parent's improper manner of doing business—without that connection, even where the parent exercises domination and control over the subsidiary, corporate separateness will be recognized." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 269 (D. Del. 1989) (citation omitted). Effectively, "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *In re Sunstates Corp. Shareholder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001) (citation omitted).

Taking these elements together, this is a "difficult standard" to meet," *id.*, and "[d]isregard of the corporate entity is appropriate only in exceptional circumstances," *Marnavi S.p.A.*, 900 F. Supp. 2d at 392 (quoting *Mobil Oil Corp.*, 718 F. Supp. at 270).

Using the documents it received in discovery as well as the deposition testimony of PPT and Right Lane employees, Frazier alleges that "Mara effectively treated Right Lane and . . . PPT[] as one entity"; Mara was routinely involved "in PPT's business decisions and marketing"; Mara was "aware[] of PPT's liquidity issues"; PPT "was jointly and severally responsible for repayment of various debts"; and Right Lane "disproportionate[ly] [received] financial benefit" from PPT "so that it could pay off lines of credit." (D.E. 321, Pl. Opp., at 4-6, 12, 14-15, 19-24 (citing D.E. 321-1, Declaration of Rosaria A. Suriano, Esq. ("Suriano Decl.") & Exs. A-UU).) Frazier alleges that because Mara managed and controlled PPT's operations, Right Lane should be held responsible for defrauding Frazier in its purchase of PPT's press formers. (*Id.* at 15, 20-24; *see* D.E. 107, TAC ¶¶ 92-98.)

15

Opposing, Right Lane points out that Frazier's supporting allegations in its third amended complaint are based "[u]pon information and belief" and do no more than recite the elements of an alter ego liability claim in a conclusory fashion. (D.E. 315-2, Right Lane MTD, at 16-17 (citing D.E. 107, TAC ¶¶ 171-176).) Right Lane argues that Frazier's additional proffered evidence does not show that Right Lane controls the day-to-day management of PPT; that PPT disregarded its corporate formalities; or that Right Lane was directly involved in PPT's sale of the press formers to Frazier. (D.E. 323, Right Lane's Reply, at 3-5.)

The Court must first decide whether Right Lane and PPT operated as "a single economic entity" by considering (1) whether PPT was adequately capitalized for the corporate undertaking; (2) whether PPT was solvent; (3) whether dividends were paid, corporate records kept, officers and directors function properly, and other corporate formalities were observed; (4) whether Right Lane siphoned corporate funds from PPT; and (5) whether PPT simply functioned as a facade for Right Lane.

Frazier has not provided evidence that PPT was not adequately capitalized at its inception, that it is insolvent now, or that it does not observe corporate formalities.[7] Instead, Frazier focuses on Right Lane's purported control of PPT and attaches a detailed chart summarizing Mara's February 2024 deposition testimony as an exhibit. (See D.E. 321-1,

---

[7] In its opposition, Frazier appears to allege that Right Lane is undercapitalized. (D.E. 321, Pl. Opp., at 12 (arguing that "lenders considered Right Lane undercapitalized").) However, since Frazier is alleging PPT is the alter ego of Right Lane, the relevant inquiry is whether PPT—not Right Lane—was undercapitalized at the time of its formation, which Frazier does not allege. Further, Mara's deposition testimony that he was concerned about PPT's liquidity (D.E. 321-1, Suriano Decl. & Ex. BB, Summary Chart of Mara's Deposition Testimony ("Mara's Dep. Summary") ¶¶ 16, 18) does not mean that PPT is currently insolvent, especially where Frazier has adduced no evidence that PPT cannot satisfy its debts, and where other evidence reveals PPT has "the most collateral in the form of equipment value" when compared to Right Lane's other subsidiary entities. (*Id.* ¶ 17.)

16

Suriano Decl. & Ex. BB, Mara's Dep. Summary.)[8]  There, Frazier points to Mara's testimony that, in his capacity of CEO of Right Lane, he managed and controlled PPT's business, finances, and personnel.  (*Id.* ¶¶ 23-35.)  Frazier alleges that PPT took on debt for Right Lane, signed new lines of credit under Right Lane's management, and had a "zero balance account structure, such that whatever cash was in the deposit accounts for the subsidiaries was swept somewhere else, so that the deposit account had a zero balance."  (*Id.* ¶¶ 1-22.)

But this evidence, taken in the best light, only goes towards one element of the single entity test—the siphoning of corporate funds.  It does not demonstrate that PPT is merely acting as a facade of Right Lane and doesn't make up for the absence of the other factors.  Frazier's evidence does show that it was normal practice for PPT's employees to "periodically" update Mara on their strategies, sales, customers, and equipment inventory.  (*Id.* ¶¶ 23-35.)  But "[g]eneral oversight by the parent corporation over its subsidiaries does not constitute evidence of improper control."  *Triple S Farms*, 2024 WL 1308822, at *13.  And although Frazier's amended complaint *claims* that Right Lane controls PPT's operations, "neither the facts [it has] alleged nor the evidence [it has] produced make a prima facie showing of day-to-day operational control that would justify the exercise of personal jurisdiction under an alter-ego theory."  *Id.* at *12.

Further, even if Frazier demonstrated that PPT and Right Lane acted as a single economic entity, it has not proffered any evidence that Right Lane used PPT's corporate form to perpetuate a fraud or injustice.  To prevail, Frazier must demonstrate that PPT is a sham LLC that exists

---

[8] The Court agrees with Right Lane that Frazier's amended complaint merely states the elements of an alter ego claim in a conclusory fashion.  (*See* D.E. 107, TAC ¶¶ 171-176.)  However, the Court may consider Frazier's factual allegations contained in and attached to its opposition brief because Rule 12(b)(2) motions "inherently . . . require[] resolution of factual issues outside the pleadings."  *Patterson*, 893 F.2d at 603.

17

"for no other purpose than as a vehicle for fraud." *In re Sunstates*, 788 A.2d at 534. Instead, Frazier focuses on PPT's alleged fraudulent conduct underlying the sale of the press formers, which is irrelevant to the required analysis. *See Triple S Farms*, 2024 WL 1308822, at *14 ("The kind of fraud or injustice that is required is *not* that worked by a tort or breach-of-contract claim underlying the plaintiff's complaint; rather, it must 'be found in the *defendant's use of the corporate form itself*.'" (emphases added) (quoting *Harrison*, 320 F. Supp. 3d at 619)).

Also, "[a] general concern that one may be unable to collect on a judgment in an action against a subsidiary does not constitute fraud or injustice to support piercing the corporate veil." *Id.* (citation and internal quotation marks omitted). By way of example, in *Triple S Farms*, plaintiffs contended that a subsidiary's corporate form should be pierced because its parent company siphoned funds from it and "saddled it with debt" before and after the lawsuit was filed. *Id.* Plaintiffs were concerned that they would not be able to recover damages from the subsidiary and wanted to add the parent company to the action. *See id.* In declining to pierce the subsidiary company's corporate veil, the court noted that plaintiffs proffered no evidence that defendants were "aware at the time the alleged siphoning occurred that this lawsuit was forthcoming"; that creditors would be unable to collect from the subsidiary if judgment was entered against it; that the subsidiary had ever failed to satisfy its debts; or that "an alleged effort to frustrate discovery in potential litigation is the kind of injustice that allows a court to disregard corporate separateness." *Id.* at *14-15.

The Court reaches the same conclusion here. Frazier's apparent worry that it might not be able to recover against PPT because of its debts and zero balance account structure is not enough to pierce PPT's corporate veil.

18

For the foregoing reasons, Frazier has failed to meet its burden to show that exercise of personal jurisdiction over Right Lane is appropriate under an alter ego theory, and Right Lane's motion to dismiss is granted.

## VI. Conclusion

Frazier's appeal (D.E. 301) of Judge Waldor's January 1, 2025 opinion and order is denied, and Right Lane's motion to dismiss (D.E. 315) for lack of personal jurisdiction is granted.  An appropriate order will follow.

Date: September 30, 2025

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.